## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ADAM H. SCOTT,<br>Plaintiff,<br><br>v.<br><br>INNERGY DEVELOPMENT,<br>Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:21-cv-550-HCN-DAO<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Mr. Scott initiated this action against Innergy Development on September 20, 2021. *See* Dkt. No. 5. On January 19, 2022, the court ordered Mr. Scott to propose a schedule to the Defendant within 14 days and then do one of three things within 28 days: (1) file a joint Attorney Planning Meeting Report and e-mail chambers a stipulated Proposed Scheduling Order; (2) file a joint Attorney Planning Meeting Report detailing the parties' disputes and a stipulated Motion for Initial Scheduling Conference "[i]f the parties cannot agree on a Proposed Scheduling Order," or (3) file a Motion for Initial Scheduling Conference stating Mr. Scott's position as to the schedule "[i]f the parties fail to agree on an Attorney Planning Meeting Report or on a stipulated Motion for Initial Scheduling Conference."[1] Mr. Scott did none of these things within 28 days. Indeed, he had still not complied with the court's order as of August 15, 2022—nearly seven months after the order was entered.

---

[1] Although the docket entry for the order stated that "Plaintiff must propose a schedule to defendant in the form of a draft Attorney Planning Meeting Report within the earlier of fourteen (14) days after any defendant has appeared or twenty-eight (28) days after any defendant has been served with the complaint," *see* Dkt. No. 19, the latter deadline did not appear in the order itself and, at the time the order was entered, the defendant had already been served and its counsel had already entered appearances, *see* Dkt. Nos. 1 –13, 15.

1

On August 15, 2022, the court ordered the parties to comply with its previous order to propose a schedule within 14 days. *See* Dkt. No. 31. As of October 5, 2022, the parties had not complied with this order.

On October 5, 2022, the court ordered the parties to file a status report within 14 days. *See* Dkt. No. 32. The parties again failed to comply.

Only after a status conference on October 31, 2022, during which the court again ordered the parties to file a proposed schedule, did the parties finally comply. *See* Dkt. Nos. 34, 35.

On November 7, 2022, the court issued a scheduling order and a discovery management order setting various deadlines for the next year. *See* Dkt. Nos. 36, 37. But the parties failed to comply with these deadlines or even to engage in any discovery. Nor did the parties seek any timely extensions or communicate in any way with the court for more than eleven months.

On October 19, 2023, the court ordered the parties to file a status report within 14 days. *See* Dkt. No. 39. The parties again failed to comply until the court issued another order setting a status conference. *See* Dkt. Nos. 40, 41. Although fact discovery had closed more than four months earlier, the parties then belatedly sought to extend the discovery deadlines. *See* Dkt. No. 41. The court denied the motion. *See* Dkt. No. 43.

Mr. Scott took no action for yet another year. Finally, on November 14, 2024, Mr. Scott requested a status conference. *See* Dkt. No. 44.

On March 4, 2025, the court held another status conference. *See* Dkt. No. 47. The court ordered the parties to submit a joint status report no later than April 4, 2025, addressing issues relating to trial logistics that had been discussed at the status conference. *See id.*

On November 23, 2025, after more than eight months had passed since the status conference (and more than seven months since the deadline for submitting the status report), the

2

court ordered Mr. Scott to "show[] cause why this action should not be dismissed for failure to prosecute and comply with court orders under Federal Rule of Civil Procedure 41(b) and DUCivR 41-2." Dkt. No. 49. Mr. Scott was ordered to respond no later than December 15, 2025. *See id.* The court warned that failure to do so would result in dismissal of the action without further notice. *See id.*

Under Federal Rule of Civil Procedure 41(b), "[if] the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." FED. R. CIV. P. 41(b). "Although the language of Rule 41(b) requires that the defendant file a motion to dismiss, the Rule has long been interpreted to permit courts to dismiss actions sua sponte for a plaintiff's failure to prosecute or comply with the rules of civil procedure or court's orders." *Olsen v. Mapes*, 333 F.3d 1199, 1204 n.3 (10th Cir. 2003). Courts also have inherent authority to clear their "calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962). Dismissal for failure to prosecute is the "standard" way to clear "deadwood from the courts' calendars" resulting from plaintiffs' "prolonged and unexcused delay." *Bills v. United States*, 857 F.2d 1404, 1405 (10th Cir. 1988).

This court's local civil rules thus provide that, "[a]t any time, the court may issue an order to show cause requiring a party seeking affirmative relief to explain why the case should not be dismissed for lack of prosecution" and, "[i]f the party does not show good cause, a district judge … may enter an order of dismissal . . . with or without prejudice, as the court deems proper." DUCivR 41-2. Where dismissal is without prejudice, "a district court may, without abusing its discretion, enter such an order without attention to any particular procedures."

3

*Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1162 (10th Cir. 2007).[2]

On December 15, 2025, Mr. Scott responded to the court's show-cause order. In that response, Mr. Scott states that he "does not disagree with the procedural history of the case as the Court has set forth," Dkt. No. 50 at 1, and he admits that "the case went kind of dormant for several months" on multiple occasions, *id.* at 3 ¶ 9; *see also id.* at 4 ¶ 15. But Mr. Scott argues that his "effort has been made difficult" by events beyond his control. *Id.* at 6. Mr. Scott explains that one of the defense attorneys, Mr. Tenney, "died unexpectedly on August 30, 2024," and that Mr. Tenney was "the Defendant's attorney with whom counsel for the Plaintiff has been dealing." *Id.* at 4 ¶ 18. Later, Mr. Pritchett, the other defense attorney, suffered the death of his mother around April 4, 2025. *See id.* at 5-6 ¶ 21.  According to Mr. Scott's counsel, Mr. Pritchett asked him "to 'bear with me'" at the time of his mother's death, so Mr. Scott's counsel "sought to be respectful of Mr. Pritchett's situation," but he admits that he "should have informed the Court of the problem in complying with the April 4, 2025, deadline to submit the Joint Status Report." *Id.* at 6. Mr. Scott "respectfully suggests that the Court require Defendant to respond to the Plaintiff's proposed Joint Status Report of April 3, 2025, by a date certain, so such Joint Status Report can be filed and get the case moving towards final resolution." *Id.*

---

[2] When dismissal is with prejudice—either by its terms or in effect—the court must consider "(1) the degree of actual prejudice to [the defendant]"; (2) "the amount of interference with the judicial process"; (3) the litigant's culpability; (4) whether the court warned the noncomplying litigant that dismissal of the action was a likely sanction; and (5) "the efficacy of lesser sanctions." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) (internal quotation marks omitted). Although, in the interests of justice, the court is dismissing the action without prejudice, the court believes the *Ehrenhaus* factors would support dismissal with prejudice given that Mr. Scott has done almost nothing to move this case forward despite the passage of almost *four years* and repeated prodding from the court.

On December 22, 2025, Innergy Development responded to Mr. Scott's response to the court's show-cause order and requested that this case be dismissed. *See* Dkt. No. 52. Innergy Development observes that Mr. Scott "has continued to fail to take meaningful action to prosecute the case, taking no further action except to file a brief on the last day of the permitted time period" to respond to the show-case order. *Id.* at 2 ¶ 3. Innergy Development also notes that Mr. Scott's "response does not identify any effort by [Mr. Scott] to prosecute the case or follow up after April 4, 2025." *Id.* at 2 ¶ 8.

Any delays associated with the passing of Mr. Tenney and of Mr. Pritchett's mother cannot reasonably account for more than a few weeks of the extended period throughout which Mr. Scott has failed to prosecute this case. Again, Mr. Scott brought suit on September 20, 2021, and he missed multiple deadlines and took very little if any action to move the case forward for almost three years before Mr. Tenney's death on August 30, 2024. And while Mr. Pritchett's mother died around April 4, 2025, that does not explain why Mr. Scott did not inform the court of this event or take any action for over seven months before the court issued the show cause order in November. The court recognizes that both parties have repeatedly failed to comply with orders, meet deadlines, or take any meaningful steps to prosecute this action. Nevertheless, it is Mr. Scott, not Innergy Development, who has a duty to prosecute this action.

In light of all this, the court finds that Mr. Scott has failed to prosecute this action, comply with this court's orders, or show adequate cause why this case should not be dismissed. The court accordingly dismisses this action pursuant to Federal Rule of Civil Procedure 41(b) and Local Rule 41-2. In the interest of justice, dismissal is without prejudice.

IT IS SO ORDERED.

DATED this 31st day of March, 2026.

BY THE COURT:

Howard C. Nielson, Jr.
United States District Judge